five minutes. So we'll hear from you. Thank you. Thank you, Your Honor. And may it please the court. My name is Gretchen Swann, and I represent a pellet of patient are Irving Garcia. Mr Garcia does not speak or understand the English language. It is undisputed that the only way he could have been present at his own trial where his liberty was at stake is if he had access to a Spanish and English language interpreter. It's also undisputed that he was not provided one because his attorney elected not to have one. Indeed, it's undisputed that his attorney did not even recognize the implication of waving an interpreter, and that would deprive his clients of underlying and fundamental constitutional rights. It's also undisputed that the trial judge took no action to ascertain whether or not Mr Garcia recognized that by forgoing an interpreter, he would be waving basic Sixth Amendment autonomy rights in 14th Amendment process, and these undisputed facts deeply troubled the district court. She was inclined to grant habeas relief except for a confusion about what is the appropriate harm analysis. She granted a C. O. A. As your honors understand on two distinct but intertwined claims, and this intertwined nature of the fact pattern is, I think, what gave rise to some confusion. Also, giving all due respect to the district court, she had no benefit of briefing from the parties. She was dealing with a pro se habeas litigant, and so the two claims have been somewhat conflated, and it's our to separate these two claims and recognize the two distinct duties they arise under and the distinct analyses that are required. The first claim arises from the trial court's duty. The trial court had a duty to ascertain whether or not this crucial waiver had been affected freely, knowingly and intelligently. No dispute that there was no such inquiry. Therefore, it should have been an automatic reversal because the harm is structural error. Swain, I'm curious what you think. What does the Supreme Court say? The procedure needs to be? You're a trial judge. You've got a defendant who you're not sure if they can proceed in English. If you're right that you need to get a waiver from the defendant himself instead of the lawyer, I mean, how do you do you do? What language do you do that in? I'm just confused about what procedure you're saying the Supreme Court and the Constitution requires. Your Honor, first, it's important to clarify that we're not as the state has contended, insisting that there was a particular procedure that had to be followed, and that's where the violation comes from. But this is considered such a no brainer that both statutory law have a procedure because giving people who do not speak the language and interpreter is now considered a non issue. And so it's instantiated in fate in state and federal law. Sure. But how do you determine if they if they need an interpreter? And I understand they get an interpreter if they need one. Your Honor, here, at least the facts of this case is very early on. It was clear there were representations on the record that Mr Garcia did not speak a English and an interpreter had been provided for him in some pretrial proceedings, including during the motion to suppress his confession. I guess more specifically, really, my question is, do you so I understand you think there's reason to believe here that boy, he really might need an interpreter. So if you need to get the waiver, but the attorney, the defense attorney saying, No, we don't need an interpreter. It's okay. It's okay. And your position is, well, you need to get that from the client. Do you ask the client in English or in his native language whether he wants an attorney? Your Honor, certainly, if he's going to understand the question, he would need to be interrogated through an interpreter. And in this particular instance, that would have been so easy because the bailiff himself was bilingual and often. All right, that brings up my other issue in here because it's Spanish on the Texas border. It's not that big. It wouldn't be that big a burden. But let's say this guy up down on the borders. It was a grant. Um, so just to get the waiver, you're saying a court would need to find an interpreter who speaks the defendant's native language to get that waiver. Yes, Your Honor. And we have to separate these two inquiries. If the court has no knowledge that the defendant does not understand English, that would be a separate issue and probably create problems in terms of the right to raise it for the first time on appeal. But if, and there are cases on this, including one from the Fifth Circuit, it's about the application of the federal statute. But it does make clear this is not an attorney's right to waive. It's personal to the client. And so once the trial court becomes aware there is a language barrier, it is up to the court to employ whatever means necessary to be able to communicate directly with that defendant in a language he can understand and ascertain. Is this a freely, knowingly, intelligently affected waiver? And though that might involve a modicum of delay of, say, the language that the defendant speaks is something highly unusual and not represented by people in that particular area. But we're talking about the fundamental right to be present at your own trial. This right is so fundamental. It's presupposed by the Sixth Amendment. The Sixth Amendment does not mention the right to be present, just like it does not mention the right to self-representation. But the Supreme Court, going back to the 19th century, has been very clear about the right to be present as being one of the most fundamental rights protected by the Sixth Amendment. And when you have one of these fundamental rights eviscerated without there being the most basic inquiry, you know, why do you understand that you have a right to confront the witnesses against you? Do you understand you have a right to participate in your defense? These questions about what you would need to do and would not be able to do if you didn't understand the language being spoken in court. I mean, it wouldn't be, you know... I agree. I mean, the situation seems like it would come up a fair amount. We're a Supreme Court case says that you need to get a personal waiver from the defendant of the right to a translator. Your Honor, this is where we would, again, draw a distinction with the arguments made by the director on behalf of the state of Texas. There is no specific Supreme Court case on the issue of an interpreter. And again, I would argue because it's presupposed in this day and age for over 100 years that you need to understand the language if you're going to be on trial where you're there. I understand that. But I mean, on the waiver issue, you would think this would come up whether the attorney or the defendant himself has to waive. Are there lower court cases saying the defendant himself has to waive? Yes, Your Honor. There's one from this circuit, U. S. Versus Tapia. This court, again, it was interpreting the statute, but it makes clear this is a personal right that the client possesses. The lawyer cannot usurp that right. The lawyer cannot, uh, presume to waive it for the client. Okay, but none saying the Constitution requires a defendant specific waiver. Actually, let me I believe the language that this court use it. If I may quote no constitutional right as such to an interpreter, but where the need exists and thus absence inhibits the access to the proceeding, deprivation of due process, uh, would follow, and it would be fundamentally unfair is the languages court you. I suggest this is analogous to you know that you don't have in the Constitution a right to an interpreter and you don't have Supreme Court cases on that specific fact pattern, just like you don't have in the Constitution that the state better provide somebody with a wheelchair if they're in jail and can't walk and they need to get over the courthouse. I mean, it would be such a self evident proposition. If you can't physically walk into the courtroom, some means needs to be provided to enable you to be present. We don't have the right to have hearing enhancement in the Constitution. We don't have that in the Supreme Court case, but the C. C. A. The court that denied Mr Garcia believe in the same year held that it would be a denial of presence at the proceeding to not allow a hearing impaired individual to have interpretation in the courtroom and the C. C. A. Your wheelchair example. I mean, if the courts someone has a physical disability and the court asked the lawyer, Oh, does your client need a wheelchair or some other assistance? And the lawyer says, No, no, he's he said he's gonna be okay. He's gonna be okay. He can walk into the courtroom on his own. Would that be unconstitutional to accept the lawyer's word for it? Your honor, I think the more apt analogy would be if the judge said, I notice your client isn't here today. Is there an issue? And the lawyer said, Uh, yeah, I thought the wheelchair would be distracting to the jury, so he's not gonna be here today. And the judge said, Fine, moved along. That would be the same thing that happened here. You need to ask the defendant. Does he not want to be there? Because being present is so fundamental. You cannot exercise those other enumerated rights in the Sixth Amendment if you don't have a wheelchair. And so this is an instance where the lawyer, the fiction that the lawyer is the same as the client breaks down. And this is something that the court discussed. The Supreme Court discussed recently in McCoy versus Louisiana. There are certain instances, and they're fundamental about the right to still be your own person with autonomy rights when it is your life at stake. Even if you're making stupid choices, it is your right. The lawyer does not get to speak for you. And in McCoy would argue this. You would argue this. This right is tantamount or sort of equal to allocution. You know, we we have cases say, you know, it's the defendant has got the allocutes. So is your argument this is sort on the same plane? Yes, Your Honor. And that is why the clearly established federal constitutional law that's the bedrock here are the waiver jurisprudence that the waiver of the right to insist on your innocence, the waiver of the right to counsel. You need some kind of allocution. Now, what form that takes? We're not saying there is a specific formula, and this court failed to follow some checklist. There isn't a checklist because again, this is such an anomaly that this person was deprived of interpreter without somebody checking. There's nothing on the record about any conversation with Mr Garcia about this. And we're talking about a Mexican national. What do you do about the fact that Mr Garcia admitted that had been informed of his right to an interpreter, and then he agreed to his lawyer's recommendation not to use one? Doesn't that? Isn't that the end of it right there? That was the waiver. No, Your Honor, because the lawyer himself admitted that he never told Mr Garcia foregoing interpret an interpreter meant foregoing your right to be present in the courtroom to confront witnesses to participate in your defense. And there's no way Mr Garcia could have intuited that he comes from a different country, a different tradition. He'd never been to trial before. So the lawyer saying I don't want you can have an interpreter, but I don't recommend it because it's going to distract. And there's conflicting evidence about whether the lawyer said it would distract the jury, which made no sense because there was an interpreter there for the Spanish language witnesses interpreting for the jury. And also interpreters don't tend to sit there whispering in people's ears. We have equipment. They sit. You know, I work with plenty of clients where you don't even know they're there. You're avoiding the question. Isn't this a waiver? Isn't that destroyed? No, it's Well, it is not a freely, knowingly, intelligently affected waiver. And that is what clearly established constitutional law requires. Not just that you give something up. People give things up all the time. The question is, do you let go of these fundamental rights with the appropriate knowledge and freedom? And I would say he had neither knowledge nor freedom. He wasn't free to make this choice because the lawyer conditioned it on something that sounded really bad. Oh, if I have this interpreter, my lawyer is going to be distracted. That's what Mr. Garcia said. And in other testimony, the lawyer claimed he thought the jury might be distracted. And the prosecutor testified that the lawyer said, I don't really want my client to know what's going on. Now, a lawyer can say, I find it distracting to have my client in the courtroom because I'd rather just concentrate on the witnesses. Well, that lawyer didn't get to make that take on the responsibility that you were there on behalf of a person and they still have rights to participate in the proceeding. So this was a waiver in the sense that it was something given up, but it was not a freely given waiver, nor was it knowing because he didn't know what those underlying rights were before he said to his attorney, okay, whatever you want. And this again is undisputed. There is nothing in the record and no one has tested. They're being an on record or off record allocution of any kind where you could probe. Why are you doing this, Mr Garcia? Your attorney says you don't want one. But why do you understand that you won't know what's going on? You won't be able to confront the witnesses itself. Your Honor, I found it extremely helpful in terms of the prejudice situation to look at Weaver versus Massachusetts 2017 case. Now, not because this is the law we're relying on, but it contains a great tutorial on the distinction between structural error and error that arises from a trial process violation and thus requires a prejudice analysis. All right, Miss Wynn, thank you for your opening. In that case, you've reserved your full rebuttal time. All right, let's see what Mr Frederick has to say. Thank you, Judge Stewart. May it please the court. Matt Frederick for Director Lori Davis. I want to start with Judge Costa's question. What Supreme Court case says you have to get a personal waiver from the defendant? The answer is there is no such Supreme Court case, and that should be the beginning and the end of the analysis under 22 54 d one. In this case, a rule requiring personal waiver by the defendant on the record is not clearly established by any Supreme Court holding and to recognize such a right on collateral review is impermissible because that would be a new rule of in certain instances has very clearly required certain procedures. As Judge Stewart mentioned, there's an allocution required. If you're pleading guilty, then there is an obligation to to make certain things clear on the record to confirm that the defendant ex understands exactly what's going on when he pleads guilty and waves multiple constitutional rights that come into play at trial. But there's no such procedure or no such general requirement even that has been established for waiver of the right to an interpreter. Um, Mr. Frederick, I take it, given the way you started, that you're at least agreeing with Miss Sweeney's factual premise that only the attorney waived the translator, right? Um, I mean, the trial court found that Mr Garcia, I think that Mr Garcia himself did in this off the record hearing. Um, the Texas Court of Criminal Appeal says Garcia effectively made an express waiver. What's what's your view of the facts? Do you agree with her that only the attorney waved? Or do you think or or is there fact saying Garcia himself way in court in court? I understand there's a different issue about whether Garcia agreed behind the scenes with his attorney. But I'm saying what happened in the courtroom. Correct. So I agree with Miss Swann to the extent that the record shows that it was Mr Garcia's attorney who informed the court. No, Judge, we don't want an interpreter. And there's no no contradictory evidence to just to undermine that. I would say, though, that I think in court, uh, Mr Garcia did confer with his attorney who said, You have a right to an interpreter, but I would recommend that we don't get one, you know, for several reasons that appear in the record. Distract jury distract me. He was specifically concerned that Mr Garcia might ask questions of the interpreter. So So I think there's no question that he authorized his lawyer to tell the and when the Texas Court of Criminal Appeals says Garcia effectively made an express waiver, it's saying through his attorney that I believe that's correct. I think that's the that's how I interpret that statement, and it's consistent with the record. And that's why the Court of Criminal Appeals decision here was was reasonable. Uh, the petitioner can't show that that was unreasonable application of clearly established law as he must under 22 54 deep one because the clearly established law, to the extent it exists, I think would be in Johnson versus herbs. Carnley versus Cochran, both of which were cited and discussed by the C C. A. And, you know, Johnson defines waiver generally intentional relinquishment or abandonment of a right or privilege. And then Carnley is what the C C. A. Focused on. It says the record must show or there must be an allegation and evidence which must show and was the right to counsel there. But but I think applying the facts to that clearly established law, it is reasonable to conclude that Mr Garcia through his attorney affected a valid waiver within clearly established law. I think the the district court, I think, made a mistake here. And I understand that Mr Garcia's argument is that no, look, it has to be the defendant himself who says to the court, I don't want this. I wave this right. I think if we look at the cases on guilty, please, I think they undermine that argument because the Supreme Court's been very clear in Boykin versus Alabama, for example, that guilty plea, it must be quote unquote spread on the record. You know, this demands the utmost solicitude. But even in the circumstances of a guilty plea in Bradshaw versus stump, which was in 2000 and five, the court held that the defendant's lawyer can represent to the court that the defendant understands the right he's giving up by pleading guilty and wishes to waive his right to stand trial. And so as long as that representation is made and not objected to by the client than for a guilty plea, that is still a valid waiver. And so I think that should remove any doubt that the attorney is circumstance to a waiver on his client's behalf. And when we look at it through 22 54 d one, of course, the test for unreasonableness is that it's the C. C. S. Determination is so lacking in justification that it is beyond any possibility for fair minded disagreement. I don't think we close to that here. At most, Mr Garcia can agree whether this is a valid waiver. The director, to be clear, thinks it absolutely is under governing law. But I think they're right to be present is clearly established. And Garcia is arguing that this is just encompassed within the right to be present. If you don't understand what's being said, you're not really present. So how do you respond to that? Yes, I think that's fair. And my response to that is that it really doesn't change the analysis any because there is no there. Just as there is no clearly established law that requires a personal statement by the defendant on the record to waive a right to an interpreter, the same goes for the right to confront witnesses and the right to be present at trial. And so I just wherever law on the right to unwaiving your right to be president of the lawyers is, oh, I know he could be here, but he'd rather be at work today. He thinks the jury's not gonna like looking at him. You know, they'll so he'd rather just do in absentia the trial. Can a lawyer wave that? Is there law on that question? I am not aware of any Supreme Court case that says the lawyer cannot do that. What I am aware of is that we cite this in our brief, but this goes to the structural error point. There is case law that says the right to be present isn't even if violated is not structural error. That's in full. Menante is probably the best place to look for that. Also, in Van Arstal versus Delaware Court held that a violation of the confrontation clause is not structural error. So I think that the inference to be drawn there is even if you accept that some sort of right to an interpreter arises out of the rights to confrontation and presence, it can be waived. There's no specific procedure or specific, you know, person who must affect that waiver. And even if, in this case, Mr Garcia could establish that his right had been violated, he would still have to show that the denial of that right prejudiced him. And he can't make that showing here because he hasn't really tried it. He basically relies on speculation that something might have jogged my memory, and I might have remembered something. But he doesn't identify what that something might be or how it reasonably would have be expected to lead to a different result at trial. And so I just to close the loop on on the interpreter waiver claim, as I understand Mr Garcia's argument, I think his his concern is that if you don't require a statement by the defendant on the record, then the problem is that the defendant doesn't really understand what he's giving up. But again, I think that runs into the same problem. There is no clearly established law that says you must express a comprehensive or at least competent legal understanding. What I understand Mr Garcia to argue is that, well, he knew he had a right to an interpreter, but he didn't understand what that right meant. That's not what the Supreme Court has required. I'm aware of no cases and the petitioner doesn't cite any where it says the defendant must understand the constitutional basis of the right. A good example of that, I think, is the Miranda War. The Miranda warning says, among other things, you have the right to remain silent. It doesn't say the Fifth Amendment's prohibition on involuntary self incrimination provides you with the right not to make an inculpatory state. So here there's no question. Mr Garcia understood the right. You have the right to an interpreter. He admits that he testified that his lawyer told him. And I don't think we can. We can't presume that he didn't know what that right entailed. He knows what that right entails. It means that nobody's going to translate English language testimony. And so I think he very well understood what he was giving up, and he can't show harm even if he could show a violation. Because, as I mentioned, he doesn't really identify anything. But also, it's worth. It's worth recognizing here that the critical testimony on the contested issue of his state of mind was largely through Spanish speaking witnesses. And so it's not as though he was completely shut out from his trial. Yeah, if I could move over to ineffective assistance, uh, that claim is procedurally default. Mr Garcia did not adequately presented to the Court of Criminal Appeals on direct appeal. The court noted at R. O. A. 8 42 note three. That claim is not properly before us, even though it was considered in the Court of Appeals. Uh, his successive state habeas application that raised that claim was dismissed and abuse of the red. And there's been no effort to show cause and prejudice for the default under Martinez and Trevino. Finally, the director raised procedural default in the district court, uh, as the district court acknowledged that R. O. A. 1 83 84 note 13. So that is an adequate and independent state law ground to deny the ineffective assistance claim. Okay, if the court could reach the merits, however, the claim would fail even on DeNovo review. Because here, Mr Garcia cannot overcome the strong presumption that his counsel provided constitutionally adequate representation. It's very it's clear on the record that Mr Garcia's lawyer had some concerns about how having an interpreter would affect the trial. Now, Mr Garcia is free to disagree with those concerns now, but there's no question that those were legitimate. And I think we know this because during the suppression hearing on Mr Garcia's statement to police, there was an interpreter present who was translating for Mr Garcia and Mr Mancius. His lawyer had no problem with that. So that supports his his understanding that having an interpreter with the jury would create some issues that he thought would affect his ability to effectively represent Mr Garcia. And so that is well within the realm of trial strategy. He thought he would do a better job. Um, and we can't forget the fact that he is bilingual. And so he was at least able, you know, if if there were inconsistent testimony or, you know, one of the English speaking witnesses for the state deviated from a pretrial statement or report, he can catch that, and he can relay that to Mr Garcia. Secondly, even if he could establish a constitutionally deficient performance for the same reasons that Mr Garcia can't establish prejudice under his interpreter waiver claim, he can't establish a reasonable probability that had his lawyer requested an interpreter, the outcome of his trial would have been different. And unless the court has further questions, I would urge the court to affirm the judgment of the district court and deny the petition for hate relief. All right. Thank you, Mr Frederick. Okay, Miss Swin, we're back to you for rebuttal. Your Honor, may it please the court. Counsel for the director was citing the court to Bradshaw for the proposition that counsel has some ability to waive rights for a client without ascertaining the client consent. I think the better case to look at is Gonzalez versus United States from 2018. In that case, the Supreme Court made clear that without particular client consent, you can waive rights that amount to tactical decisions. And in that case, it was whether or not to proceed with Vordire in front of a magistrate judge as opposed to an Article three judge. And the court made clear that is the kind of thing a lawyer can make. It can the magistrate judge. They know the district court judge. They can make a strategic decision about what might be the better for when you're talking about a fundamental personal right to autonomy in your own criminal trial. That is not something that can ever be sublimated to the lawyer's will. Also, it is very difficult to accept the C. C. A. S. Finding that there was a of an adequate waiver. This is where the district court was correct in saying this was an unreasonable fact finding an express waiver as Judge Clement was referring to that there was an admission on the record that yes, the attorney told me you didn't want this. So I said, whatever you want, that is an express waiver, but it is not a constitutionally valid waiver. And the fact that the C. C. A. S. Puts in a footnote a citation to Carly versus Cochran exposes they knew there was an issue here. They had other they had decided in 1993 you couldn't deprive someone of an interpreter without that implicating Sixth Amendment rights and due process rights. So to cite case law without applying it without making any inquiry about whether this was a free waiver and knowing an intelligent waiver is not to comply with clearly established federal law. The other the reason why the director wanted to shift the discussion to Strickland, even though I would maintain this is clearly deficient performance. Just because you think something is distracting does not make it a strategic decision, as the magistrate judge said in his findings and recommendation to the district court. But the tricky part is the inquiry. But we don't ever get to ineffective assistance, which was preserved. It was raised in the motion for new trial, as was the fundamental trial court failure of ascertaining whether or not there was a free knowing intelligent waiver. So the first claim that arising from the trial court's duty with we look to Weaver versus Massachusetts, like I started to say, there's this great tutorial about what's the difference between structural error and run of the mill trial process errors. And Justice Kennedy explained that there are three broad rationales for finding structural error. One is when you have a right that is really separate from the right to be free from conviction, such as the right to represent yourself, which actually can make it easier for you to get convicted. There's also the right such as the right to the choice of counsel, which is Gonzalez versus Lopez. That's also a hard to go back and reconstruct the alternative reality that would show prejudice. And finally, there's structural error when it renders the proceeding fundamentally unfair. And that's Gideon is an example. I would represent this court that all three of those broad, well established rationales for finding structural error are implicated in this case. You have an situation where going back and trying to articulate that alternative route of reality had Mr Garcia known what was going on is almost impossible to do. And it's just fundamentally unfair. The idea of someone sitting through a murder trial, not knowing 80% of what's going on, including from the state's key witnesses about the nature of his guilt, the nature of his flight, the subject of his contested confession, etc. Now, it would be possible to potentially in a Strickland scenario, reconstruct prejudice. But then again, we look to Weaver versus Massachusetts, which says the inquiry has to be case specific. Strickland versus Washington itself talks about the need for a flexible inquiry based on the nature of the allegation. Now, the AEDPA, as interpreted by the Supreme Court and Williams versus Taylor does not require that you point to a Supreme Court case with the exact same facts. You can take a general principle and say it was unreasonably applied to the facts of that specific case. And that's what we have here, Your Honor. All right, thank you for your rebuttal. Ms Swin, you are court appointed and this panel, as well as that court as a whole, is always very appreciative of the work that you do and others who take on these cases to provide briefing and oral argument on behalf of your client. So we thank you for your service in this case, the briefing, appearing oral argument and the other services on behalf of your client. Your look, where are you? You're in Texas? Yes, Your Honor. I'm in Austin, Texas. All right, Mr. Frederick, you in Austin also? Yes, Your Honor. All right, hot spots. Okay. All right. And I don't mean temperature hot. But anyway, we appreciate it. The case will be submitted and we'll get it decided as soon as we can. Thank you both.